IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL PEARCE, | ) | CASE NO.  1:09 CV 892 |
| | ) |            1:05 CR 120 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255.  (Docket #127 in Case

No. 1:05 CR 120.)  For the reasons set forth below, Petitioner's Motion is DENIED.

**Factual and Procedural History**

On January 14, 2005, officers from the Cleveland Police Department
("CPD") and the Cleveland Metropolitan Housing Authority ("CMHA") were
conducting a special detail in the area surrounding the Woodhill Family Homes
Estates and the Morris Black Estates, housing projects in northeast Cleveland.  In
particular, the officers were targeting the streets surrounding the Mount Carmel
Deli (the "Deli"), a delicatessen located at 11007 Mt. Carmel Street.  This special
detail was intended to address a recently increased level of criminal activity –
particularly narcotics trafficking in the area, which had been evidenced by a
homicide shooting near the Deli a few days earlier.

At approximately 8:15 p. That evening, Johnson, accompanied by a
passenger, Pearce, parked a white Ford Taurus on the south side of Mt. Carmel
Street, across from the Deli.  Shortly thereafter, Officer Paul Shaughnessy
("Shaughnessy"), a fifteen-year veteran of the CMHA, initiated the planned

police sweep by pulling onto Mt. Carmel Street and parking his marked police cruiser in the middle of the street, little behind where the Taurus had been parked. While Officer Shaughnessy was parking and exiting from his cruiser, he observed Pearce leaning slightly forward in the passenger seat of the Taurus while Johnson exited the vehicle on the driver's side.  As soon as Johnson stepped out of the car, "he turned and he faced toward [Officer Shaughnessy], and he kind of hunched over a little bit, and he stuck his right hand into the small of his back at his waistline, and then he started backing up, started backing up away from [Officer Shaugnessy], . . . toward the front of his car."  J.A. at 226.  According to Officer Shaughnessy, "it appeared as though [Johnson] was trying to pull something out, or put something in his pants."  J.A. at 74.  Fearing that Johnson might have a weapon, Officer Shaughnessy immediately drew his own gun and ordered Johnson to show his hands and walk toward the police cruiser.

During this time, other CPD officers, including Officer Daniel Svoboda ("Svoboda"), had arrived on the scene and had begun to move toward the Taurus to assist Officer Shaughnessy.  When Johnson failed to comply with several of Officer Shaughnessy's verbal requests to show his hands, Officer Svoboda also drew his gun and advanced toward Johnson.  Officer Svoboda observed that, instead of complying with Officer Shaughnessy's instructions, Johnson was "reaching behind his back," J.A. at 270, where it "appeared he was holding something down out of his back or hands."  J.A. at 118.  Once Officer Svoboda drew his weapon, Johnson complied with the request to show his hands and moved toward Officer Shaughnessy who began to frisk Johnson in search of weapons.  From this protective pat-down of Johnson, Officer Shaughnessy recovered nine small plastic bags containing marijuana.

As Officer Shaughnessy was conducting his pat-down of Johnson, Officer Svoboda walked towards the now empty Taurus.  Looking through the passenger's side window, Officer Svoboda saw "a magazine or clip from a gun laying on the passenger floorboard" in plain view.  J.A. at 272.  At that point, Officer Svoboda immediately shouted "gun."  Upon hearing this warning, Officer Shuaghnessy placed handcuffs on Johnson and other officers detained Pearce who was still in the immediate vicinity of the Taurus.  Officer Svoboda and other CPD officers then searched the Taurus.  Their search uncovered a Hi-Point 9mm pistol with seven rounds of ammunition underneath the passenger seat, as well as crack cocaine, a Bryco 9mm pistol, and twelve rounds of ammunition between the driver's seat and the middle console of the vehicle.

While still being detained by Officer Shaughnessy, Johnson voluntarily informed the officer that he was the owner of one of the guns.  Johnson again confirmed that he possessed the Bryco firearm in a subsequent interview with Agent Christopher Arone from the United States Bureau of Alcohol, Tobacco, and Firearms.  Pearce never admitted to ownership of either weapon.

Based upon the firearms discovered during the search of the Taurus, on March 9, 2005, Defendants were charged in the United States District Court for the Northern District of Ohio with one count each of being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(b)(1). On June 9, 2005, Pearce filed a motion to suppress evidence. On December 16, 2005, Johnson filed a motion to suppress all evidence which the law enforcement officers had obtained as a result of their stop of him and their subsequent search of the Taurus. After conducting an evidentiary hearing, the district court denied these motions on August 1, 2006.

On December 4, 2006, the case proceeded to a jury trial. At the conclusion of the evidence, Defendants again requested the district court to suppress the evidence obtained following the allegedly unconstitutional stop of Johnson. These motions, like their previous ones, were denied. The jury subsequently convicted Defendants of the felon in possession charges.

On January 31, 2007, the district court held Defendants' sentencing hearing. The district court found both Defendants to be armed career criminals, and thus required to serve a minimum of fifteen years imprisonment pursuant to 18 U.S.C. § 924(e). With respect to Johnson, the district court noted that the advisory United States Sentencing Guidelines (the "Guidelines") range was 188 to 235 months. With respect to Pearce, the district court calculated the advisory Guidelines range to be 235 to 293 months. After considering arguments raised by Defendants, as well as the specific characteristics of each of them, the district judge sentenced Johnson to 188 months imprisonment, followed by five years of supervised release, and sentenced Pearce to 235 months imprisonment, followed by five years of supervised release.

(Decision of the Sixth Circuit Court of Appeals, July 7, 2008, Docket #124 in case No. 1:05 CR 120, at pp. 2-3.)

On February 1, 2007, Pearce filed a timely notice of appeal. Shortly thereafter, on February 12, 2007, Johnson filed his notice of appeal. The appeals were subsequently consolidated. On July 7, 2008, the Court of Appeals affirmed the convictions and sentences imposed by this Court.

On April 17, 2009, Petitioner filed his Motion pursuant to 28 U.S.C. § 2255. Petitioner argues three issues for review: (1) that counsel was ineffective in failing to file a Rule 29 Motion, based upon the Government's alleged failure to meet its standard of proof; (2) that

counsel was ineffective in failing to offer evidence that the co-defendant claimed ownership of the firearm charged in the indictment; and, (3) that Petitioner is innocent of the charged offense and Counsel was ineffective in failing to argue sufficiency of evidence on direct appeal

On June 9, 2009, the Government filed its Brief in Opposition to Petitioner's Motion. (Docket #134.)  The Government argues that Petitioner has failed to satisfy the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and, therefore, that his ineffective assistance of counsel claims are baseless.  Specifically, the Government asserts that Petitioner has failed to show that Counsel's performance fell below an objective standard of reasonableness.

First, relative to Petitioner's claim that counsel was ineffective for failing to make a Rule 29 motion for acquittal, the Government points to the Trial Transcript which indicates that the Court stated that it assumed that each defendant made a motion for acquittal and overruled each motion.  (Trial Tr. p. 331.)  Further, the Government asserts that even if Counsel had failed to file a Rule 29 motion with the Court, it would not amount to ineffective assistance of counsel because, based upon the evidence, such a motion would have had no chance for success.

Relative to Petitioner's claims that counsel was ineffective for allegedly conducting limited cross examination;  failing to make inquiry regarding fingerprint evidence; and, failing to call witnesses and the co-defendant to testify, the Government points to Counsel's specific cross-examination regarding fingerprint evidence and the fact that defense Counsel's tactical decision not to call witnesses falls within the wide range of reasonable professional representation.

Second, relative to Pearce's claim that Counsel was ineffective in its failure to cross-examine co-defendant's statements regarding ownership of the gun, the Government points to

-4-

Counsel's inquiries on cross-examination regarding co-defendant's admissions.  Counsel conducted a lengthy cross-examination of Sergeant Shaughnessy about the answers co-defendant gave about the ownership of the gun.  In addition, the Government points to the Trial Transcript which demonstrates that Counsel made further inquiries regarding co-defendant Johnson's admissions during his re-cross examination of Officer Daniel Svoboda; cross-examination of Sergeant Mark Shepard; and, cross-examination of Special Agent Christopher Arone.  The Government asserts that any tactical decisions by Counsel were an exercise of reasonable professional judgment.

Third, relative to Petitioner's claim that Appellate Counsel was ineffective for failing to argue the sufficiency of evidence on direct appeal, the Government argues that the evidence against Petitioner was overwhelming and that there was no reasonable possibility that a different verdict would have been reached by a different jury.  Appellate counsel is not required to raise non-frivolous issues on appeal.  *Jones v. Barnes*, 463 U.S. 7445 (1983).  Accordingly, the Government argues that Petitioner has not demonstrated that Appellate Counsel's performance was deficient under *Strickland*.

## Discussion

Title 28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

**Ineffective Assistance of Counsel.**

In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court established the requirements for a claim ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.   In order to show that his attorney's performance was deficient, a defendant must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  In order to satisfy the requirement of prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In order to prevail on his ineffective assistance of counsel claim, Petitioner must rebut the presumption that his attorney's representation was reasonable.  Specifically, he must prove that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.

The assertions made by Petitioner as to the alleged deficiencies of Counsel have no support in the Record.  The Court considered and denied acquittal pursuant to Rule 29.  Further, Counsel's cross-examination of witnesses and decisions at trial regarding witnesses, based on the facts and circumstances of this case, were objectively reasonable and Petitioner has failed to prove otherwise.  Finally, the Court finds Appellate Counsel's performance to be reasonable, as

the evidence proving the case against Petitioner was overwhelming and Counsel was not required to raise meritless claims on appeal.

## Conclusion

For the reasons set forth above, Petitioner's Motion to Vacate, Set Aside or Correct Sentence filed pursuant to 28 U.S.C. § 2255 ((Docket #127 in Case No. 1:05 CR 120) is DENIED.

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition.  28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.  Where the petition has been denied on a procedural ground without reaching the underlying constitutional claims, the court must find that the petitioner has demonstrated that reasonable jurists could debate whether the petition states a valid claim of the denial of a constitutional right *and* that reasonable jurists could debate whether the district court was correct in its procedural ruling.  *Id.*  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

    s/Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: July 20, 2009

-8-